IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA

Amended Complaint

CV 00-JF-2643-NE

NOTICE TO FILING PARTY

It is your responsibility to notify the clerk in writing of any address change. Failure to notify the clerk may result in dismissal of your case without further notice.

Inmate Identification Number: 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

Gary Wayne Drinkard

(Enter above the full name(s) of the plaintiff(s) in this action)

vs.

Larry Bennich, Stephen Crabbe, Thomas Little, Jon Slick, Myra Yates, Jennifer Hill, Alan Pepper

(Enter above full name(s) of the defendant(s) in this action)

**I.   Previous lawsuits**

   A.   Have you begun other lawsuits in state or federal court(s) dealing with the same facts involved in this action or otherwise relating to your imprisonment?
        Yes ( ✓ )        No (   )

   B.   If your answer to (A) is "yes," describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuit(s) on another piece of paper, using the same outline.)

        1.   Parties to this previous lawsuit:

             Plaintiff(s):    Gary Wayne Drinkard

             Defendant(s):   Dora Key, Kevin Beasley + David Rawlings

             Gary Wayne Drinkard v Stephen Crabbe

14

2. Court (if Federal Court, name the district; if State Court, name the county)
   Northern District      -      Northern District

3. Docket number  94-H-1052-NE    -    ?

4. Name of judge to whom case was assigned    James H. Hancock
   ?

5. Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending?)   settled out of court in plaintiffs favor  also settled with this one out of court. ∗

6. Approximate date of filing lawsuit   June 1994    -   Aug, 1994

7. Approximate date of disposition   Aug. 1995   -   Aug 1995

II. Place of present confinement   Morgan Co. Jail  Decatur Alabama

   A. Is there a prisoner grievance procedure in this institution?
      Yes ( ✓ )        No ( )

   B. Did you present the facts relating to your complaint in the state prisoner grievance procedure?
      Yes ( )        No ( ✓ )

   C. If your answer is YES:

      1. What steps did you take? _____

      2. What was the result? _____

   D. If your answer is NO, explain why not?  When I ask several officers for grievance form - I was told that they would bring one but one was never brought. It is my opinion that this procedure is in name only as I have witnessed others ask and not receive

2

III. **Parties**

In item (A) below, place your name(s) in the first blank and place your present address in the second blank. Do the same for additional plaintiffs, if any.

A. Name of plaintiff(s) __Gary Wayne Drinkard__

Address __P.O. Box 668, Decatur, Al. 35602-0668__

In item (B) below, place the full name of the defendant in the first blank, his official position in the second blank, and his place of employment in the third blank. Use item (C) for the names, positions, and places of employment of any additional defendants.

B. Defendant __Larry Bennich__

is employed as __Chairman Morgan Co. Commishoner__

at __Morgan Co. Court house Decatur, Al.__

C. Additional Defendants __Stephen Crabbe - Sheriff - Morgan County, Thomas Little - Chief Deputy - Morgan County, Jon Slick - Warden - Morgan County Jail, Myra Yates - Jail Administrator - Morgan County Jail, Jennifer Hill - Supervison Correction Officer - Morgan Co. Jail, Alan Pepper - Corrections Officer - Morgan County Jail__

IV. **Statement of Claim**

State here, as briefly as possible, the FACTS of your case. Describe how each defendant is involved. Include also the names of other persons involved, dates and places. <u>Do not give any legal arguments or cite any cases or statutes.</u> If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Use as much space as you need. Attach extra sheets, if necessary.

_____

_____

_____

_____

3

V. **RELIEF**

State briefly <u>exactly</u> what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

_____
_____
_____
_____
_____
_____

"I declare under penalty of perjury that the foregoing is true and correct.

Executed on _Dec. 28, 2000_.

_Gary Drusand_

Signature(s)

IV. Statement of Claim
   A. Mr. Larry Bennich is the Chairman for the Morgan County Commissioners in Decatur Alabama. He is the final decision maker when it comes to paying expenses for the maintenee and up keep of Morgan Co. Jail.

   It has been his policy for many years now to disregard the Fire Marshall's reports of major fire code violations as well as the danger to human life due to the asbestos panels in the main corridors of the second and third floor of the jail. According to Newspaper articles these very same such reports were known of in the 1980's.

   They knew long ago of these hazardous conditions because this jail was designed for a future addition of another floor. But knowing that someone could blow the whistle on them about the unsafe conditions the much reduced cost of another floor was never contemplated. Rather a discussion of a new jail and property was purchased with an ear mark for a new jail.

   In Sept. 2000 this whistle blew in a Deputy Fire Marshalls report that this jail posed a danger to property and human life just on the fire code violations before the asbestos test was even confirmed. The Commissioner has been and is deliberately indifferent to any tragic event that could occur. Some of these asbestos panels are dislodged hanging and could drop and shatter, contaminating hundreds of prisoners eventually causing them to have cancerous tumors. Maintenee men working above ceiling disturb these panels.

①

Wild animals which can be heard running and playing and even seen above ceiling disturb these panels. Inmate cleaning crews disturb them when hit with mop or broom handle. Each time one of the four Red door around the hall way is shut it creats a vacum and disturbs these panels causing them to move and rub against cement blocks. The roof leaks wetting the panels and when drying they release glass fibers into the air.

The chairman for the Morgan Co. Commissioners has been in office for a good number of years and knew or should have known about this danger to human life. He has been and is showing reckless and callous disregard as well as intentional violation for federal law.

I am very depressed and fearfull of the situation that I am forced to live in!

B. Mr. Stephen Crabbe is the Sheriff of Morgan County and as such the Morgan Co. Jails top exective officer, making on going policy and establishing procedure as to how the jail runs on a daily basis.

① Sheriff Crabbe has instituted unconstitutional policy either verbal or written by authorizing his staff being none medical personal (other than the Nurse) to dictate to medical personal as to what type of drugs they may prescribe for prisoners medical needs.

I have at times sever back pain due to bulging disks which has been established with M.R.I.'s and orthopedic surgon's reports. In 1993 thru 1995 while awaiting trial here under the same sheriff, I was allowed to see my personal doctor and receive mild narcotics which reduced the pain to a bareable level and the County Commission paid for.

Now Dr. Khouri, (after being advised by Warden Slick not to approve for me to see my personal doctor) gives instructions for me to see an orthopedic surgon. Nurse Boyd arranged an appointment for the week of Nov. 20, 2000 to see Dr. Solorio. Dr. Solorio was my previous orthopedic surgon and knew my case history, after examining me he ask Officer Philip Johnson (second shift supervisor) what was the policy. Immediately Officer Johnson said you can't prescribe narcotics so Dr. Solorio prescribed an anti inflamatory drug to help with the pain.

On Nov. 28, 2000 Warden Slick in the presence of Officer Skinner and Nurse Boyd, stated to me that the prescribed drug was too expensive, that my conditions was pre-existing prior to comming to Morgan Co. Jail, and that the Sheriff had a policy not to pay for medication of a pre-existing condition. All the while they were paying for ulcer medication! I had to get my criminal attorney involved, "which he stated to me that he was much too busy to be bothered with civil matters", and the medication finally started Dec. 20, 2000. It has taken me five months to establish this medication which only helps slightly! The pain and the mental stress have been overwhelming. This policy is a reckless and callous disregard and intentional violations of federal law, which Mr. Crabbe should be well aware of due to his many years as an F.B.I. agent.

3) Mr. Crabbe has now served as Sheriff of Morgan County for his third - 4 year term. He knew or should have known about the serious fire code violations and the danger to human life due to the asbestos. There seems to be a conspiracy between himself, the Commissioner and other officials to cover this up. As intellegent and aware as

Mr. Crabbe is, there seems no possible way that he could not have known about the hazardous situation that existed in the jail. Our society deems asbestos to be life threatening, as it causes cancer.

C. Mr. Thomas Little is the Chief Deputy under Sheriff Crabbe and is Warden Slick's and Cpt. Yates' immediate supervisor. Mr Little has been prior an A.B.I. agent for several years and has even went to law school but as of yet has not passed the state bar. Therefore he should be well aware of the unconstitutional conditions and policys that Warden Slick and Cpt. Yates implement. I had submitted copies of the complaints stated in this suit putting him, Warden Slick and Cpt Yates on notice of the unconstitutional conditions in Aug. of 2000. Warden Slick arrogantly refused to discuss the issues.

While in the observation cell on first floor after an appendix surgery Warden Slick stated to me (Sept. 26, 2000 approx 4-5:00pm), "that he has supported some of my complaints, but all had been shot down and that he was receiving direct orders so his rear was covered". He would not tell me of whom the orders came but Chief Little is the next link in the chain of command for Warden Slick and Cpt. Yates. It is my contention that it is he advising and ordering Slick and Yates to carry out the unconstitutional policys and procedures. Mr. Little is deliberately indifferent in his failure to properly train and supervise both Slick and Yates. He also demonstrates wanton and callous disregard and intentional violation of federal law.

D. Mr. Jon Slick is the Warden at Morgan Co. Jail and shares authority to promulgate policy and procedure with Jail Administrator Myra Yates.

① On a number of occasions I have requested legal material (case cites). On July 28, 2000 I requested some but Warden Slick was on vacation so he didn't answer my request until Aug. 4, 2000 stating, "We do not have a law library here but do have a law librarian next door, Hand mail her. If you have an attorney he will be responsible to get it. If you represent yourself a cost of 10¢ per page is deducted from your store account." (Just tonight Dec. 27, 2000 on my way back from sick call with inmates Larry Dover and Sherell Garth we saw a small library on the third floor where we are housed containing approx. 25 southern reporters, 10 each federal supplements 2nd and 3rd edition, Federal titles 1-? approx 30-35 books and some others I didn't have time to see so Mr. Slick is a liar!) Warden Slick did not tell me the librarian's name and I did not have an attorney at that time so I was glad to pay the 10¢ per copy, and sent a later request to him on Aug. 4, 2000.

I am charged with capital murder and am now back for a new trial as I was convicted in 1995 and sentenced to death. I am innocent of the crime but poor and must rely on appointed attorneys whom are over worked and under paid - not to mention trying to litigate unconstitutional conditions here. I need access to a law library in order to be a meaningful part of my defense. I have a GED and 1 years of college and understand what I can read. There is no legal help here for civil matters and most of the men here were suffering greatly before I arrived, and told them of

⑤

the 1983 civil rights suit. Again on Aug. 4, 2000 I requested from Warden Slick certian case cites, and he responded, "You must write a relative and have them come to the court house law library. They will pay for these items, Then librarian will send them." My mother is 65 years old, on a fixed income and depends on my wife to drive her here for the monthly visits! My wife is poor with an average yearly income of less than $20K and is solely responsible for the up bring of two teenage children and cannot afford to deviate her time nor monies. I get small gifts sent to my account via money orders from my mother or friends. Again on Aug. 7, 2000 I requested 3 case cites, Warden Slick sent officer Strickland to ask if I had an attorney and I stated no and still no case cites were provided. Warden Slick basically shut the door to any meaning full access to the courts. Due to lack of access I am now filing an Amended complaint causing an interruption in litigation and my criminal trial is scheduled for Feb. 26 2001. Although I now have appointed attorneys for my criminal case, I am not allowed to adequately prepare in case their expertise is lacking as were the ones in 1985 and I am ultimately responsible. I could actually lose my life or many more years of my life being locked up away from children that need me. I am not able to properly prepare this complaint due to lack of Federal Rules of Civil Procedure and the forms, not to mention relevant and up to date case law. The little I do have written down is 1970's case cites and I am unable to shepardize any of these nor do I have much knowledge of the Prison Litigation Reform Act. In essence I am spitting into the wind trying to like

(6)

this. If counsel isn't appointed or injunctive relief granted to spend time in the law library here or next door, I will not be able to prepare for defendant's motion for summary judgement.

(9) Warden Slick's deliberate indifference to properly train and/or supervise his underlings led to my mail being sent back on Aug. 7, 2000 and again on Nov. 9, 2000 – the first stating "unauthorized pamplets", the second stating "unauthorized material; No blank note book papers no computer print-outs of any kind. Inmates must buy paper and stamps from store". The first was a simple newsletter from Project Hope to Abolish the Death Penalty, an anti-death penalty organization which I was a board member of. The second was only 2 pages of computer print-outs about the unconstitutional conditions here which I have posted on the internet. These somehow came back on second shift where I was allowed to have them. Where as Officer Jennifer Hill (first shift supervisor) had sorted the mail and lied on the return slip to cover her unconstitutional action of sending the computer print-outs back!

(10 a.) Officer Alan Pepper's failure to get me a mattress after Nurse Boyd told him that some were at the Annex accross the street on July 28, 2000. Pepper was aware of my back injury and pain as he was present when I talked to Dr. Khouri and Nurse Boyd about the situation. Also on Aug. 2 2000 officer Pepper put me in serious danger by placing hand cuffs and leg irons on me as he led me with a group of men without same to sick call. That same evening upon returning to my cell, Pepper laughed and said, "you still sleeping on steel", "I'll get you a mattress now. That was not done and it took 7 more days and the guards finding out that

I was in the process of initiating a law suit before I was given a mattress.

(b) On Aug. 2, 2000 I ask Officer Philip Johnson (second shift supervisor), "why was I being hand cuffed when others weren't and why was I in the one man isolation cell?" He stated, "that the alleged victim in my case had a son in the annex across the street and that it was for my own protection. Yet on Sept. 26, 2000 while in observation cell after an appendix surgery, the men from the Annex were adjecant to me in the garage area due to rain. This observation room has no lock, only 2 latches which open from the outside. Approx. noon-1:00pm the Annex men would come inside at will to use the tolite. Officer Smith had went out in the garage to deliver mail or some such reason, but immediately after he came back inside, the son of the alleged victim Mr. Mark Pace came inside staring at and mouthing that he would kill me, pretended to use the tolite and came back out staring at me on his way back to the garage. I was in constant fear for the next two days imagining him comming back with a knife or gun and I was paranoid of Officer Smith so I stayed quiet. Officer Johnson had came in at noon that day to relieve the first shift supervisor so she could attend a class.

③ⓒ I have been basically locked inside this isolation cell for 24 hours per day, 7 days per week for 5 months now, unless going to sick call or to the hospital, with the exception of one hours exercise time on the roof on Oct. 31, 2000. I am almost sure that the population cells have been out at least three times during that time. But no matter this is no where close to being sufficient!

E. Ms. Myra Yates is a captain and the Jail Administrator at the Morgan Co. Jail. She shares authority to promulgate policy and procedure in the jail with Warden Slick.

① On Aug. 3, 2000 I wrote Cpt. Yates asking for a mattress with no results.

② On Oct. 7, 2000 health Inspector came around with Cpt. Yates and Warden Slick. (I had previously begged for cleaning materials daily with no results). I showed the health Inspector human feces on the wall which had been there for several months and complained about the inadiquate lighting in the one man cells. You could see Cpt. Yates face redening, he ask Cpt. Yates if this could be taken care of soon and she said "yes of course. I did not get them until Oct. 29, 2000 but the lighting is still very poor plus I could not remove the human feces from the ceiling without getting bleach in my eyes.

③ On Oct. 23, 2000 Cpt. Yates was sorting mail, two officers told me they saw her doing this, one stating "he saw her take two pages from a letter and take them toward the Sheriff's office. I will not at this time name these two officers for fear of retalation. These two pages had to be the two missing computer print-out sheets pertaining to the unconstitutional conditions at this jail. She gave no return slip or unauthorized slip - just took them, the letter stated that they were inclosed for which the court has as exibits to an injunction, which was refered to this amendell complaint.

④ On Oct. 28, 2000 two officers informed me that Cpt. Yates had left orders for me to take showers in 2-C on the second floor instead

of in one of the four cells on the third floor where I am housed and normally took showers due to so many law suits comming out of the cells on third floor. She stoped us from consulting each other on legal matters. Most of the men here are indigent and must use appointed attorneys. Before my arrival one man was charged with his first possession of 7 grams of morijuana which should have been a misdomeanor but the attorney advised (and he did so) him to plead guilty to 15 years! Another instance a man is charged with capital murder (killing his infant baby), the autopsy came back as to the cause of death - natural causes, this man was sent to Taylor Harden to be evaluated to see if he could stand trial and they stated that he was not competant to stand trial - yet his appointed attorney convinced him and his parents to plead guilty for 25 years else he would get the death penalty! These men need someone!! There are many other such cases!!

⑤ On Oct. 29, 2000 Warden Slick puts out a memo for inmates to receive sweat suits. I comply with this memo to the letter but Cpt. Yates denies me the sweat suit after my poor mother had it bought and brought up here. This is plain harrassment which should fall back to Chief Little's failure to properly train and supervise. This is wanton and callous disregard as well as intentional violations of federal law.

F. Ms. Jennifer Hill is the first shift supervisor at the Morgan Co. Jail and takes orders directly from Cpt. Yates and Warden Slick.

① On two seperate occasions Officer Hill has sent back mail that I knows of, once, the first time she didn't give me a return slip and I later learned of this from the lady that wrote to me, sending me a news letter. The second time I received a return slip but with lies on it

as to what was truely inside the letter. The first was on Aug. 7, 2000 the second being on Nov. 8, 2000. She stated "unauthorized pamphlet" on the first and "unauthorized materials; No blank notebook paper, no computer print-outs of any kind, Inmates must buy paper and stamps from store." The "no blank notebook paper and Inmates must buy paper and stamps from the store is a cover to her unconstitutional behavior in sending the computer print-outs back. I know there was only 2 pages of computer print outs because they came back the next day with a copy of her return slip on second shift where I was allowed to have them.

③ On Oct 8, 2000 an Officer Quinnally of first shift came through locking the red doors in the main halls preparing for 3-C and 3-D to receive visitors. He came into the cat walk of the one man cells where I am housed in the middle of three cells stateing that he smelled smoke. Well I stated that I smelled smoke also and he told me if I was smoking not to set anything on fire and not to do it on his shift any more and left. A few minutes later he came back stateing that he had told then supervisor Dean (first shift assistant supervisor) and that Dean had told him he could write a disiplinary or drop it as he didn't see matches or cigeratter so he said that it was droped. The next day after Officer Quinnally gets off work, Officer Hill orders officers Heard and Wilson to come take my walkman radio and then to shake my cell down for contraband, none was found yet my radio was taken indifinitely my visit for that month was taken and my store privledge which Officer Quinnally got back but Officer Hill still conviently lost my store order for that week after Officer Quinnally handed it to her!

(11)

The inmate handbook with the rules for inmates of the Morgan Co. Jail has no infraction about smelling smoke. It also states that a three member panel will review such write ups and the inmate can call witnesses and plead his/her case. This is in writting only as this Never happens. These people write you up when they want to, for what ever they want to and take any priviledges they choose for as long as they choose and you have no recourse here what-so-ever! This is wanton and callous disregard and intentional violations of federal law. Officer Hill should know better because she has attended D.O.C. training sessions.

G. Mr. Alan Pepper was a corrections officer working second shift, he has been quit for several months.

① Officer Pepper brought me to the one man cell upon my arrival on July 27, 2000 with no mattress, stating that he would get me one the next day. The next day I sign up for sick call in an attempt to get medicine for my stomach ulcer and sever back pain. Officer Pepper was present while I told Dr. Khouri and Nurse Boyd of my problems. When leaving I told Dr. Khouri that a mattress would help my back and Nurse Boyd told Officer Pepper that there were some in the Annex accross the street. Pepper said I'll get them, he did not follow through with his word. Again on Aug. 2, 2000 I signed up for sick call but unlike July 28 - now Pepper puts hand cuffs and leg irons on me and puts me with a group of men that have no chains on them and takes us all to the holding cell on first floor to await sick call, this was very destressful! Second shift supervisor Officer Johnson got me out of the holding cell and I ask him why was I in cuffs and leg irons and no one else was. He said something

to the effect that I wasn't supposed to be around them and that Pepper knew this. I ask why this was and he said that I was in protective custody because the alleged victim in my case had a son at the Annex accross the street. Upon returning to my cell Officer Pepper laughed and said," you still sleeping on steel ", "then I'll get you a mattress now. Seven days later after a trustee told them that I was initiating a civil rights lawsuit they hurried me a mattress. For 13 days my back hurt so bad that I could hardly sleep and that seems to have inflamed the old injury. I was told by other officers of several instances where Pepper had demonstrated oppressive, abusive and even sadistic behavior to several prisoners and that he had been repremanded. This clearly shows lack of proper training and supervision plus a reckless and callous and intentional violation of federal law.

V. Relief
A. I want a trial by jury
B. I want an appointed attorney or injunctive relief granting permission to visit law library on a regular basis to be determined by the court.
C. I want to sue each named defendant in his/her official and/or individual capacity.
D. I want $10 million dollars in compensatory damages and any punitive damages the court may deem fit and proper, from each named defendant.
E. I want immediate injunctive relief as to testing for asbestosis and if tests prove positive, proper medical attention to be deemed by court

and/or special master.

F. I want to be allowed 1 hour per day exercise weather permitting outside.

G. I want proper lighting and writting table installed in one man cell.

H. I want immediate smear test for asbestos fibers by independant contractor to be determined by court or a special master and if tests prove positive to be removed to another institution where my life wont be in danger of contracting cancerous tumors.

I. I want to be allowed to receive any soft back books, magazines, newsletters that does not premote hatered within reason to be determined by court or special master.

J. I want to be allowed to have my walkman radio and to be allowed to obtain batteries for same as needed.

K. I want to be free from retaliation and be provided with due process to any future disiplinories.

L. I want instructions given to these people, that as long as I am incarcerated in their jail or under their care and have an illness and a doctor prescribes me medication - they are to pay 100% of said medication

M. A special master needs to monitor that there is someone at all times with legal knowledge to consult with inmates about civil and criminal matters.